CONTE C. CICALA, State Bar No. 173554
*conte.cicala@clydeco.us*
CLYDE & CO US LLP
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile:  (415) 365-9801

Attorneys for Plaintiff
CAROTRANS INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROTRANS INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> US GENERAL SHIPPING, USG FREIGHT, INC., USG UNITED STATES SHIPPING LINE and MARK B. TOQWE, <br><br> Defendants. | Case No. 2:22-cv-705 <br><br> COMPLAINT FOR DAMAGES |

Plaintiff CAROTRANS INTERNATIONAL, INC. ("Carotrans") alleges as follows:

**JURISDICTION**

1.  This is a suit for ocean freight and charges including unpaid detention and demurrage fees pursuant to ocean bills of lading, tariff, and/or service contracts and therefore comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). In the alternative, it presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 *et seq*.

## THE PARTIES

2. Plaintiff Carotrans is now and at all times material herein was a corporation duly organized and existing under the laws of the United States of America, and a licensed Non Vessel Operating Common Carrier of goods for hire between United States ports and foreign ports, and properly published tariffs and/or agreements and/or arrangements for the transportation of goods of the type and between the ports or areas as hereinafter alleged.

3. At all times relevant, Defendants US GENERAL SHIPPING, USG FREIGHT, INC. and USG UNITED STATES SHIPPING are one or more companies and/or trade names of companies organized under the laws of the United States of America engaged in business as Ocean Freight Forwarders and so licensed by the U.S. Federal Maritime Commission.

4. At all times relevant, Defendant MARK B. TOQWE ("Toqwe") is, on information and belief, an individual residing in the United States of America and is engaged in the business of shipping cargo in international trade by ocean.

## GENERAL ALLEGATIONS

5. Plaintiff's Bill of Lading ("B/L"), tariff, and standard contract terms and conditions provide, *inter alia*:

    1.   DEFINITIONS
        g) "Merchant" means the shipper, consignee, receiver, holder of this Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges, and for the performance of the obligations of any of them under this Bill of Lading.

    7.   MERCHANT'S RESPONSIBILITY/DESCRIPTION OF GOODS
        e) The Merchant shall be liable for all loss or damage of any kind whatsoever, including but not limited to … detention and demurrage before, during and after the Carriage of property (including but not limited to Containers) of the Carrier or any person or vessel (other than

the Merchant) caused by the Merchant or any person acting on its behalf or for which the Merchant is otherwise responsible.

f) The Merchant and the Goods themselves shall be liable for and shall indemnify the Carrier, and the Carrier shall have a lien on the Goods … for demurrage on Containers and any payment, expense, fine, dues, duty tax, import, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel or any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure… failure of the Merchant …to comply with laws or regulations of any kind imposed with respect to the Goods by the authorities at any port or place or any act or omission of the Merchant. The Carrier's lien shall survive delivery and may be enforced by private or public sale and without notice.

g) The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of this Clause 7. or from any cause in connection with the Goods for which the Carrier is not responsible.

A copy of the subject bill of lading, together with relevant terms and conditions applicable, is attached hereto as Exhibit A.

6. This case arises from a shipment ("Subject Shipment") of two containers numbered SUDU8578376 & PONU3063501 said to contain used automobiles and sundry other cargo shipped pursuant to Carotrans bill of lading ("B/L") number FCLMON2127001.

7. At all relevant times, Defendants were "Shipper" and/or "Consignee" and/or "Merchant" as those terms are defined in the Carotrans Bill of Lading, tariff, and scontracts with respect to the Subject Shipments, for which proper bills of lading and freight bills were issued by or on behalf of Carotrans.

8. The consignee for the Subject Shipments has failed to pick them up from the destination port of Monrovia, Liberia and they remain in the possession of Customs there.

9. As a result of the failure to collect the Subject Shipments remaining at the destination port, the Subject Shipments have incurred, and continue to incur, substantial detention and demurrage fees.

10. As of January 18, 2022, those charges have accumulated to $15,160.00 and continue to accrue.

11. Under the Shipping Act, 46 U.S.C. §§ 40101 *et seq*., as well as the applicable contracts of carriage, Defendants are obligated to pay the entire amount of Freight due under the applicable bills of lading, tariff and contracts for each shipment, to include detention, demurrage and disposal charges.

12. Under the Shipping Act, 46 U.S.C. §§ 40101 et seq., as well as the applicable contracts of carriage, Defendants are obligated to pay for all losses and expenses resulting from any breaches of the Merchant's warranties set forth above, and to indemnify Carotrans from the same.

13. Carotrans has also incurred additional expenses and costs relating to the Subject Shipments, including internal staff time, dealing with Customs, and logistical issues associated with the Defendants' actions, and will continue to do so, including auditing expenses and attorney fees and costs incurred in this action in collection of this unpaid freight.

14. In light of the foregoing, the claims herein relate to and/or arise out of the same occurrence or series of occurrences, and common questions of fact and/or law as to all defendants will arise in this action.

## FIRST CAUSE OF ACTION
### (Breach of Maritime Contract)

15. Carotrans repeats and realleges each and every allegation contained in paragraphs 1 through 14, with the same force and effect as if fully set forth herein at length.

16. Pursuant to the Subject Bills of Lading and otherwise, Defendants agreed and otherwise became bound to pay Carotrans for ocean freight and related

charges in amounts provided by the bill of lading and tariff. Carotrans has duly invoiced them for same. However, Defendants have failed to pay charges due and owing.

17. Each defendant owes outstanding freight charges in the amounts set forth above. Plaintiff hereby demands payment of the outstanding ocean freight charges. Defendants further owe an additional amount, according to proof, in additional loss and expense associated with defendants' breach.

18. Plaintiff accepted for export, transported, and delivered all cargoes tendered by defendants and has performed each and all of its obligations, actual and implied, arising pursuant to the bill of lading and otherwise imposed by law.

## SECOND CAUSE OF ACTION
### (Indemnity/Declaratory Relief)

19. In addition or in the alternative, Carotrans repeats and realleges each and every allegation contained in paragraphs 1 through 18, with the same force and effect as if fully set forth herein at length.

20. Pursuant to the Subject Bills of Lading and otherwise, Defendants each agreed and otherwise became bound to indemnify Carotrans for all losses, expenses and damages resulting from defendants' breaches of the Merchant's warranties and obligations referenced above.

21. Carotrans's damages set forth above are continuing to accrue, in an amount according to proof.

22. Carotrans respectfully requests an order from this Court declaring that the Defendants, and each of them, are liable to pay all charges to Customs at destination, to secure the release of the cargo and equipment, to pay Carotrans all amounts due now and that will accrue in the future in relation to the Subject Shipment, and otherwise.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Carotrans prays judgment as follows:

1. For damages as alleged herein and in the amount according to proof;

2. For an order that defendants are liable to pay all charges to Customs at destination, to secure the release of the cargo and equipment, to pay Carotrans all amounts due now and that will accrue in the future in relation to the Subject Shipment, and otherwise.

3. For all costs of suit, attorney fees and other expenses herein incurred;

4. For any other relief as the Court may deem proper.

Dated:  February 1, 2022        CLYDE & CO US LLP

                                By:  /s/ *Conte C. Cicala*
                                     Conte C. Cicala
                                     Attorneys for Plaintiff
                                     CAROTRANS INTERNATIONAL, INC.

# EXHIBIT A

# CaroTrans

REMIT TO: CAROTRANS INTERNATIONAL, INC  
100 WALNUT AVE., SUITE 202  
Clark, NJ 07066  
PHONE: (732) 540-8100  
FAX: (732) 540-8123

Page 1 of 4  
FMC # 016017N

## BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | | BOOKING NO. | | BILL OF LADING NO. |
|---|---|---|---|---|
| MARK B TOQWE<br>C/O US GENERAL SHIPPING<br>3315 W. FILLMORE ST, APT 104A<br>PHOENIX, AZ 85009<br>TEL:480 239 9614, . , .<br>Phone: .   Fax: . | 1340485 | FCLMON2127001 | LAX | FCLMON2127001 |
| | | EXPORT REFERENCES<br>CUST REF #: 214930 | | |

| CONSIGNEE NAME/ADDRESS (NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | | FORWARDING AGENT, F M C NO. |
|---|---|---|
| MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARTOQWE@GMAIL.COM<br>Phone:   Fax: | 1313381 | Phone:   Fax:<br>POINT AND COUNTRY OF ORIGIN OF GOODS |

| NOTIFY PARTY (COMPLETE NAME AND ADDRESS) | | FOR DELIVERY PLEASE APPLY TO: | |
|---|---|---|---|
| SAME AS ABOVE<br>.<br>.<br>...<br>Phone:   Fax: | 1353842 | FCL MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARKTOQWE@GMAIL.COM<br>Phone: 231 776 829 937   Fax: | 0906875 |

| PRE-CARRIAGE BY: | PLACE OF RECEIPT BY PRE-CARRIER | CONTAINER<br>SUDU8578376 | FILE #<br>71138 | SEAL NUMBER<br>UL-2712796 |
|---|---|---|---|---|
| VESSEL<br>MSC TORONTO/126E | PORT OF LOADING<br>HOUSTON | LOADING PIER/TERMINAL | | |
| PORT OF DISCHARGE<br>MONROVIA | PLACE OF DELIVERY BY ON CARRIER | NUMBER OF ORIGINALS<br>ONE (1) | | |

### PARTICULARS FURNISHED BY SHIPPER

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| SUDU8578376<br>UL-2712796 | 1 | 40 HIGH CUBE DRY CONTAINER SLAC<br><br>76 PIECES SLAC:<br><br>2008 SAAB 9-3 VIN:<br>YS3FB79Y186006641<br>1579 KGS<br><br>2015 CHRYSLER 200 VIN:<br>1C3CCCAB4FN621781<br>1575 KG<br><br>2008 BMW 535XI VIN:<br>WBANV93558CZ70209<br><br>**NON-NEGOTIABLE**<br><br>These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. Government or as otherwise authorized by U.S. law and regulations. | 8290.000  KG | |

**TOTAL NUMBER OF PACKAGES**

The declared value of the GOODS is $  
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valorem rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

**AES:** SEE BODY OF BILL

| CHARGES, INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| OCEAN 40 | L | 4010.00 | 4010.00 | |
| ENVIRONMENTAL FUEL F | L | 253.00 | 253.00 | |
| LOW SULPHUR SURCHARG | L | 10.00 | 10.00 | |
| VGM PROCESSING FEE | L | 10.00 | 10.00 | |
| OCEAN 45 | L | 3788.75 | 3788.75 | |
| ENVIRONMENTAL FUEL F | L | 253.00 | 253.00 | |
| LOW SULPHUR SURCHARG | L | 10.00 | 10.00 | |
| VGM PROCESSING FEE | L | 10.00 | 10.00 | |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.  
Where applicable law requires and not otherwise, one original BILL OF LADING must be surrended, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrended in exchange for delivery unless applicable law so states.

TOTAL Continued   TOTAL Continued

CaroTrans As Carrier  
By:

Receipt for Shipment Date:  
Sail Date: 7/8/2021

# CaroTrans

REMIT TO: CAROTRANS INTERNATIONAL, INC  
100 WALNUT AVE., SUITE 202  
Clark, NJ 07066  

PHONE: (732) 540-8100  
FAX: (732) 540-8123  
FMC # 016017N  

## BILL OF LADING

| SHIPPER/EXPORTER(COMPLETE NAME AND ADDRESS) | | BOOKING NO. | | BILL OF LADING NO. |
|---|---|---|---|---|
| MARK B TOQWE<br>C/O US GENERAL SHIPPING<br>3315 W. FILLMORE ST, APT 104A<br>PHOENIX, AZ 85009<br>TEL:480 239 9614, , . | 1340485 | FCLMON2127001 | LAX | FCLMON2127001 |
| | ** | EXPORT REFERENCES<br>CUST REF #: 214930 | | |
| Phone: . | Fax: . | | | |

| CONSIGNEE NAME/ADDRESS(NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | | FORWARDING AGENT, F M C NO. |
|---|---|---|
| MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARTOQWE@GMAIL.COM | 1313381 | |
| | | Phone: Fax: |
| | | POINT AND COUNTRY OF ORIGIN OF GOODS |
| Phone: | Fax: | |

| NOTIFY PARTY(COMPLETE NAME AND ADDRESS) | | FOR DELIVERY PLEASE APPLY TO: | |
|---|---|---|---|
| SAME AS ABOVE<br>.<br>.<br>... | 1353842 | FCL MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARKTOQWE@GMAIL.COM | 0906875 |
| Phone: | Fax: | Phone: 231 776 829 937 Fax: | |

| PRE-CARRIAGE BY: | PLACE OF RECEIPT BY PRE-CARRIER | CONTAINER<br>SUDU8578376 | FILE #<br>71138 | SEAL NUMBER<br>UL-2712796 |
|---|---|---|---|---|
| VESSEL<br>MSC TORONTO/126E | PORT OF LOADING<br>HOUSTON | LOADING PIER/TERMINAL | | |
| PORT OF DISCHARGE<br>MONROVIA | PLACE OF DELIVERY BY ON CARRIER | NUMBER OF ORIGINALS<br>ONE (1) | | |

### PARTICULARS FURNISHED BY SHIPPER

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| PONU3063501<br>26277723 | 1 | 1780 KG<br><br>2007 MAZDA CX-7 VIN:<br>JM3ER293470111527`<br>1782 KG<br><br>72 PCS OF HOUSEHOLD GOODS,<br>USED CLOTHING, AND MATRESSES -<br>1574 KG<br><br>HS CODE: 9403.20<br>AES: SEE BODY OF BILL<br>45 HIGH CUBE CONTAINER SLAC | 8481.000 KG | |
| | | **NON-NEGOTIABLE** | | |

These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. Government or as otherwise authorized by U.S. law and regulations.

**TOTAL NUMBER OF PACKAGES**

The declared value of the GOODS is $  
**AES:** SEE BODY OF BILL  
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valoram rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

| CHARGES, INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.

Where applicable law requires and not otherwise, one original BILL OF LADING must be surrended, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrended in exchange for delivery unless applicable law so states.

| | TOTAL Continued | TOTAL Continued |
|---|---|---|
| CaroTrans<br>As Carrier<br>By: | Receipt for<br>Shipment Date:<br>Sail Date: 7/8/2021 | |

REMIT TO: CAROTRANS INTERNATIONAL, INC.
100 WALNUT AVE., SUITE 202
Clark, NJ 07066
PHONE: (732) 540-8100
FAX: (732) 540-8123
FMC # 016017N

# BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | BOOKING NO. | BILL OF LADING NO. |
|---|---|---|
| MARK B TOQWE  1340485<br>C/O US GENERAL SHIPPING<br>3315 W. FILLMORE ST, APT 104A<br>PHOENIX, AZ 85009<br>TEL:480 239 9614, . .  **<br>Phone: .    Fax: . | FCLMON2127001    LAX<br>EXPORT REFERENCES<br>CUST REF #: 214930 | FCLMON2127001 |

| CONSIGNEE NAME/ADDRESS (NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | FORWARDING AGENT, F M C NO. |
|---|---|
| MARK B TOQWE  1313381<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARTOQWE@GMAIL.COM<br>Phone:    Fax: | Phone:    Fax:<br>POINT AND COUNTRY OF ORIGIN OF GOODS |

| NOTIFY PARTY (COMPLETE NAME AND ADDRESS) | FOR DELIVERY PLEASE APPLY TO: |
|---|---|
| SAME AS ABOVE  1353842<br>.<br>.<br>...<br>Phone:    Fax: | FCL MARK B TOQWE  0906875<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARKTOQWE@GMAIL.COM<br>Phone: 231 776 829 937    Fax: |

| PRE-CARRIAGE BY: | PLACE OF RECEIPT BY PRE-CARRIER | CONTAINER<br>SUDU8578376 | FILE #<br>71138 | SEAL NUMBER<br>UL-2712796 |
|---|---|---|---|---|
| VESSEL<br>MSC TORONTO/126E | PORT OF LOADING<br>HOUSTON | LOADING PIER/TERMINAL | | |
| PORT OF DISCHARGE<br>MONROVIA | PLACE OF DELIVERY BY ON CARRIER | NUMBER OF ORIGINALS<br>ONE (1) | | |

## PARTICULARS FURNISHED BY SHIPPER

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | | 77 PIECES SLAC:<br><br>2001 FORD EXPLORER VIN:<br>1FMZU67E01UC83831<br>1758 KG<br><br>2005 FORD EXPLORER VIN:<br>1FMDU77K65UA39175<br>2027 KG<br><br>2015 CHRYSLER 200 VIN:<br>1C3CCCBG2FN651890<br>1579<br><br>**NON-NEGOTIABLE**<br><br>These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), in their original form or after being incorporated into other items, without first obtaining approval from the U.S. Government or as otherwise authorized by U.S. law and regulations. | | |
| **TOTAL NUMBER OF PACKAGES** | | | | |

The declared value of the GOODS is $
**AES:** SEE BODY OF BILL
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valoram rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

| CHARGES, INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |
| | | | **TOTAL**<br>Continued | **TOTAL**<br>Continued |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.
Where applicable law requires and not otherwise, one original BILL OF LADING must be surrended, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrended in exchange for delivery unless applicable law so states.

CaroTrans
As Carrier

By:

Receipt for
Shipment Date:

Sail Date: 7/8/2021

REMIT TO: CAROTRANS INTERNATIONAL, INC.
100 WALNUT AVE., SUITE 202
Clark, NJ 07066
PHONE: (732) 540-8100
FAX: (732) 540-8123
FMC # 016017N

# BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | | BOOKING NO. | | BILL OF LADING NO. |
|---|---|---|---|---|
| MARK B TOQWE<br>C/O US GENERAL SHIPPING<br>3315 W. FILLMORE ST, APT 104A<br>PHOENIX, AZ 85009<br>TEL:480 239 9614, . . | 1340485 | FCLMON2127001 | LAX | FCLMON2127001 |
| | | **EXPORT REFERENCES**<br>CUST REF #: 214930 | | |
| | ** | | | |
| Phone: . | Fax: . | | | |
| **CONSIGNEE NAME/ADDRESS** (NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | | **FORWARDING AGENT, F M C NO.** | | |
| MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARTOQWE@GMAIL.COM | 1313381 | | | |
| | | Phone: | Fax: | |
| | | **POINT AND COUNTRY OF ORIGIN OF GOODS** | | |
| Phone: | Fax: | | | |
| **NOTIFY PARTY** (COMPLETE NAME AND ADDRESS) | | **FOR DELIVERY PLEASE APPLY TO:** | | |
| SAME AS ABOVE<br>.<br>.<br>... | 1353842 | FCL MARK B TOQWE<br>BEND N STOP, BEHIND INDIAN<br>MATERIAL STORE, MONROVIA 10,<br>LIBERIA EMAIL:<br>MARKTOQWE@GMAIL.COM | | 0906875 |
| Phone: | Fax: | Phone: 231 776 829 937 | Fax: | |
| **PRE-CARRIAGE BY:** | **PLACE OF RECEIPT BY PRE-CARRIER** | CONTAINER<br>SUDU8578376 | FILE #<br>71138 | SEAL NUMBER<br>UL-2712796 |
| **VESSEL**<br>MSC TORONTO/126E | **PORT OF LOADING**<br>HOUSTON | **LOADING PIER/TERMINAL** | | |
| **PORT OF DISCHARGE**<br>MONROVIA | **PLACE OF DELIVERY BY ON CARRIER** | **NUMBER OF ORIGINALS**<br>ONE (1) | | |

**PARTICULARS FURNISHED BY SHIPPER**

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| | | 2012 CHRYSLER 200 VIN:<br>1C3CCBBB1CN241530<br>1543 KG<br><br>73 PCS OF HOUSEHOLD GOODS,<br>USED CLOTHING, AND MATRESSES -<br>1574 KG<br><br>HS CODE :9403.20<br>FREIGHT PREPAID<br><br>**NON-NEGOTIABLE** | | |
| **TOTAL NUMBER OF PACKAGES** | 2 | These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. Government or as otherwise authorized by U.S. law and regulations. | 36973.347 LB<br>16771.000 KG | 0.000 CF<br>0.000 CM |

The declared value of the GOODS is $
**AES:** SEE BODY OF BILL
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valoram rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

| CHARGES, INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| | | | | |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.
Where applicable law requires and not otherwise, one original BILL OF LADING must be surrended, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrended in exchange for delivery unless applicable law so states.

TOTAL $8,344.75

CaroTrans As Carrier
By:

Receipt for Shipment Date:
Sail Date: 7/8/2021

# TERMS AND CONDITIONS

RECEIVED FOR SHIPMENT from the MERCHANT in apparent good order and condition unless otherwise stated herein, the GOODS mentioned on the face of this Bill of Lading to be transported as provided herein, by anymode of transport for all or any part of the Carriage,  SUBJECT TO ALL THE TERMS AND CONDITIONS appearing on the face and back hereof and in the CARRIER'S applicable Tariff(s) and/or Service Agreements, to which the Merchant agrees by accepting this Bill of Lading.

1. **DEFINITIONS.**
   a)  "Bill of Lading" as used herein includes conventional bills of lading, as well as electronic, express and laser bills of lading, sea waybills and all like documents, howsoever generated, covering the Carriage of Goods hereunder, whether or not issued to the Merchant.
   b)  "Carriage" means the whole or any part of the operations and services undertaken or performed by or on behalf of the Carrier with respect to the Goods.
   c)  "Carrier" means the Company named on the face side hereof and on whose behalf this Bill of Lading was issued, whether acting as carrier or bailee.
   d)  "Charges" means freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant.
   e)  "Container" means any container (closed or open top), van, trailer, flatbed, transportable tank, railroad car, vehicle, flat, flatrack, pallet, skid, platform, cradle, sling-load or any other article of transport and any equipment associated or appurtenant thereto.
   f)  "Goods" means the cargo received from the shipper and described on the face side hereof and any Container not supplied by or on behalf of the Carrier.
   g)  "Merchant" means the shipper, consignee, receiver, holder of this Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges, and for the performance of the obligations of any of them under this Bill of Lading.
   h)  "On Board" or similar words endorsed on this Bill of Lading means that in a Port to Port movement, the Goods have been loaded on board the Vessel or are in the custody of the actual ocean carrier and, in the event of intermodal transportation, if the originating carrier is an inland or coastal carrier, means that the Goods have been loaded on board rail cars or another mode of transport at the Place of Receipt and/or are in the custody of a Participating carrier and en route to the Port of Loading named on the reverse side.
   i)  "Participating carrier" means any other carrier by water, land or air, performing any stage of the Carriage, including inland and coastal carriers, whether acting as sub-carrier, connecting carrier, substitute carrier or bailee.
   j)  "Person" means an individual, a partnership, a body corporate or any other entity of whatsoever nature.
   k)  "Vessel" means the ocean vessel named on the face side hereof, and any substitute vessel, feedership, barge, or other means of conveyance by water used in whole or in part by the Carrier to fulfill this contract.

2. **CARRIER'S TARIFFS.**
   The Goods carried hereunder are subject to all the terms and conditions of the Carrier's applicable tariff(s) and/or Service Agreements which, if required, are on file with a regulatory body whose rules govern all or a particular portion of the Carriage and said terms and conditions are hereby incorporated herein as part of the Terms and Conditions of this Bill of Lading.  Copies of the relevant provisions of the applicable tariff(s) are obtainable from the Carrier or  concerned regulatory body upon request.  In the event of any conflict between the terms and conditions of such tariff(s) and the Terms and Conditions of this Bill of Lading, this Bill of Lading shall prevail.

3. **WARRANTY/ACKNOWLEDGMENT.**
   The Merchant warrants that in agreeing to the Terms and Conditions hereof, it is, or is the agent and has the authority of, the owner or person entitled to the possession of the Goods or any person who has a present or future interest in the Goods.
   The Merchant acknowledges that the Carrier is a non-vessel operating common carrier ("NVOCC"), and that it neither owns nor charters vessels, as a result of which the Carrier or any sub-carrier, connecting carrier or substitute carrier (which may be a NVOCC) will be required to contract with an actual ocean carrier to accomplish the Carriage contemplated by this Bill of Lading and does so as agent of the Merchant.
   The Merchant further acknowledges that by identifying the carrying Vessel on the face side hereof, it knows or can determine the name of the actual ocean carrier and the terms and conditions of the actual ocean carrier's bill of lading and applicable tariff(s) and agrees to be bound thereby.

4. **RESPONSIBILITY.**
   a)  Except where the Carriage covered by this Bill of Lading is to or from a port or locality where there is in force a compulsorily applicable ordinance or statute of a nature similar to the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, August 25, 1924, the provisions of which cannot be departed from, and suit or other proceeding is instituted and litigated in such locality, this Bill of Lading shall have effect subject to the Carriage of Goods by Sea Act of the United States ("COGSA"), approved April 16, 1936, and nothing herein contained, unless otherwise stated, shall be deemed a surrender by the Carrier of any of its rights, immunities, exemptions, limitations or exonerations or an increase of any of its responsibilities or liabilities under COGSA or, as the case may be, such compulsorily applicable ordinances or statutes.  The provisions of COGSA or such compulsorily applicable ordinances or statutes (except as otherwise specifically provided herein) shall govern before loading on and after discharge from the vessel and throughout the entire time the Goods or Containers or other packages are in the care, custody and/or control of the Carrier, Participating carriers or independent contractors (inclusive of all subcontractors), their agents and servants, whether engaged by or acting for the Carrier or any other person, as well as during the entire time the Carrier is responsible for the Goods.  In the absence of compulsorily applicable legislation, COGSA shall apply.
   b)  The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery, mis-delivery or other loss or damage to or in connection with the Goods or Containers or other packages occurring at any time contemplated under subdivision a) of this Clause.
   c)  The Carrier shall, irrespective of which law is applicable under subdivision a) of this Clause, be entitled to the benefit of the provisions of Sections 181 through 186 and 188, Title 46, U.S. Code.
   d)  The rights, defenses, exemptions, limitations of and exonerations from liability and immunities of whatsoever nature provided for in this Bill of Lading shall apply in any action or proceeding against the Carrier, its agents and servants and/or any Participating carrier or independent contractor.

5. **THROUGH TRANSPORTATION.**
   When either the Place of Receipt or Place of Delivery set forth herein is an inland point or place other than the Port of Loading or Port of Discharge (Through Transportation basis), the Carrier will procure transportation to or from the sea terminal and such inland point(s) or place(s) and, notwithstanding anything in this Bill of Lading contained, but always subject to Clause 4. hereof, the Carrier shall be liable for loss or damage of whatsoever nature and howsoever arising to the following extent, but no further:
   a)  Upon proof that the loss or damage arose during a part of the Carriage herein made subject to COGSA or other compulsorily applicable legislation, as set forth in Clause 4. a) hereof, said legislation shall apply; or
   b)  Upon proof that the loss or damage not falling within a) above, but concerning which the law of any country, state or subdivision thereof contains provisions that are compulsorily applicable and would have applied if the Merchant had made a separate and direct contract with the Carrier, a Participating carrier or independent contractor, as referred to in Clause 4. a), relative to a particular stage of transport or other handling wherein the loss or damage occurred and received as evidence thereof a particular receipt or other document, then the liability of the Carrier, Participating carrier and independent contractor shall be subject to the provisions of such law.
   c)  If it should be determined that the Carrier bears any responsibility for loss or damage occurring during the care, custody and/or control of any Participating carrier or independent contractor, and be subject to law compulsorily applicable to their bills of lading, receipts, tariffs and/or law applicable thereto,  then the Carrier shall be entitled to all rights, defenses, immunities, exemptions, limitations of and exonerations from liability of whatsoever nature accorded under such bill of lading, receipt, tariff and/or applicable law, provided however, that nothing contained herein shall be deemed a surrender by the Carrier of any of its rights, defenses and immunities or an increase of any of its responsibilities or liabilities under this Bill of Lading, the Carrier's applicable tariff or laws applicable or relating to such Carriage.
   d)  Except as hereinabove provided, the Carrier shall have no liability for damage to the Goods.

6. **SUBCONTRACTING: BENEFICIARIES.**
   a)  The Carrier shall be entitled to subcontract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by it in relation to the Goods or Containers or other packages or any other goods.
   b)  It is understood and agreed that if it should be adjudged that any person or entity other than or in addition to the Carrier is under any responsibility with respect to the Goods or any other goods, regardless of the port or place where any loss or damage shall occur and without regard to whether the Goods covered hereby or any other goods are being handled or are damaged directly or indirectly during any handling, and even if the Goods or other goods are transported on free in, stowed and/or free out terms, all exemptions, limitations of and exonerations from liability provided by law or by the Terms and Conditions hereof shall be available to all agents, servants, employees, representatives, all Participating (including inland and coastal) carriers and all stevedores, terminal operators, warehousemen, crane operators, watchmen, carpenters, ship cleaners, surveyors and all independent contractors whatsoever. In contracting for the foregoing exemptions, limitations of and exonerations from liability, the Carrier is acting as agent and trustee for and on behalf of all persons described above, all of whom shall to this extent be deemed to be a party to the contract evidenced by this Bill of Lading, regardless for whom acting or by whom retained and paid, it being always understood that said beneficiaries are not entitled to any greater or further exemptions, limitations of or exonerations from liability than those that the Carrier has under this Bill of Lading in any given situation.
   c)  The Carrier undertakes to procure such services as necessary and shall have the right at its sole discretion to select any mode of land, sea or air transport and to arrange participation by other carriers to accomplish the total or any part of the Carriage from Port of Loading to Port of Discharge or from Place of Receipt to Place of Delivery, or any combination thereof, except as may be otherwise provided herein.
   d)  The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the actual ocean carrier's bill of lading and of all exemptions, limitations of and exonerations from liability therein contained even though the Carrier acts as agent of the Merchant in contracting with the actual ocean carrier for the Carriage of the Goods. Notwithstanding, under no circumstances shall the Carrier be responsible for any damages to an extent greater than the actual ocean carrier or any beneficiaries thereof or hereof.
   e)  No agent or servant of the Carrier or other person or class named in subdivision b) hereof shall have power to waive or vary any of the Terms and Conditions hereof unless such waiver or variation is in writing and is specifically authorized or ratified in writing by an officer or director of the Carrier having actual authority to bind the Carrier to such waiver or variation.

7. **MERCHANT'S RESPONSIBILITY/ DESCRIPTION OF GOODS.**
   a)  The description and particulars of the Goods set out on the face hereof or any description, particular or other representation appearing on the Goods or documents relating thereto are furnished by the Merchant and the Merchant warrants to the Carrier that the description, particulars and any representation made including, but not limited to, weight, content, measure, quantity, quality, condition, marks, numbers and value are correct.
   b)  The Merchant warrants that it has complied with all applicable laws, regulations and requirements of Customs, Port and other Authorities and shall bear and pay all duties, taxes, fines, imposts, expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering, addressing or any other particular relative to the Goods.
   c)  The Merchant further warrants that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.
   d)  No Goods which are or may become dangerous, inflammable or damaging or which are or may become liable to damage any property or person whatsoever shall be tendered to the Carrier for Carriage without the Carrier's prior express consent in writing and without the Container or other covering in which the Goods are to be transported being distinctly marked on the outside thereof so as to indicate the nature and character of any such articles and so as to comply with all applicable laws, regulations and requirements. If any such articles are delivered to the Carrier without such written consent and marking or if in the opinion of the Carrier the articles are or are liable to become of a dangerous, inflammable or damaging nature, the same may at any time be destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Charges.
   e)  The Merchant shall be liable for all loss or damage of any kind whatsoever, including but not limited to contamination, soiling, detention and demurrage before, during and after the Carriage of property (including but not limited to Containers) of the Carrier or any person or vessel (other than the Merchant) caused by the Merchant or any person acting on its behalf or for which the Merchant is otherwise responsible.
   f)  The Merchant and the Goods themselves shall be liable for and shall indemnify the Carrier, and the Carrier shall have a lien on the Goods for all expenses of mending, repairing, fumigating, repacking, coopering, baling, reconditioning of the Goods and gathering of loose contents, also for expenses for repairing Containers damaged while in the possession of the Merchant, for demurrage on Containers and any payment, expense, fine, dues, duty tax, import, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel or any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing of Containers or other packages or description of the contents, failure of the Merchant to procure consular, Board of Health or other certificates to accompany the Goods or to comply with laws or regulations of any kind imposed with respect to the Goods by the authorities at any port or place or any act or omission of the Merchant.  The Carrier's lien shall survive delivery and may be enforced by private or public sale and without notice.
   g)  The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of

(1)

**TERMS AND CONDITIONS**

this Clause 7. or from any cause in connection with the Goods for which the Carrier is not responsible.

8. **CONTAINERS.**

   a) Goods may be stowed by the Carrier in or on Containers, and may be stowed with other goods.  Containers, whether stowed by the Carrier or received fully stowed, may be carried on or under deck without notice, and the Merchant expressly agrees that cargo stowed in a Container and carried on deck is considered for all legal purposes to be cargo stowed under deck.  Goods stowed in Containers on deck shall be subject to the legislation referred to in Clause 4. hereof and will contribute in General Average and receive compensation in General Average, as the case may be.

   b) The Terms and Conditions of this Bill of Lading shall govern the responsibility of the Carrier with respect to the supply of a container to the Merchant.

   c) If a Container has been stuffed by or on behalf of the Merchant, the Carrier, any Participating Carrier, all independent contractors and all persons rendering any service whatsoever hereunder shall not be liable for any loss or damage to the Goods, Containers or other packages or to any other goods caused (1) by the manner in which the Container has been stuffed and its contents secured, (2) by the unsuitability of the Goods for carriage in Containers or for the type of Container requested by and furnished to the Merchant, or (3) condition of the Container furnished, which the Merchant acknowledges has been inspected by it or on its behalf before stuffing and sealing.

   d) The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from one or more of the matters covered by a), b) and/or c) above.

9. **CONTAINERS WITH HEATING OR REEFER APPARATUS.**

   Containers with temperature or atmosphere control apparatus for heating, refrigeration, ventilation or otherwise will not be furnished unless contracted for expressly in writing at time of booking and, when furnished, may entail increased Charges.  In the absence of an express request, it shall be conclusively presumed that the use of a dry container is appropriate for the Goods.

   Merchant must provide Carrier with desired temperature range in writing at time of booking and insert same on the face side of the Bill of Lading and, where so provided, Carrier is to exercise due diligence to maintain the temperature within a reasonable range while the Containers are in its care, custody and/or control or that of any Participating carrier or independent contractor. The Carrier does not accept any responsibility for the functioning of temperature or atmosphere-controlled Containers not owned or leased by Carrier or for latent defects not discoverable by the exercise of due diligence.

   Where the Container is stuffed or partially stuffed by or on behalf of the Merchant, the Merchant warrants that it has properly pre-cooled or pre-heated the Container, that the Goods have been properly stuffed and secured within the Container and that the temperature controls have been properly set prior to delivery of the Container to the Carrier, or any Participating carrier or independent contractor, their agents and servants.  The Merchant accepts responsibility for all damage or loss of whatsoever nature resulting from a breach of any of these warranties, including but not limited to other cargo consolidated in the Container with the Merchant's Goods or to any other cargo, property or person damaged or injured as a result thereof, and the Merchant agrees to defend, indemnify and hold the Carrier, Participating carriers and independent contractors, their agents and servants,  harmless from and against all claims, suits, proceedings and all other consequences thereof regardless of their nature and merit.

10. **OPTION OF INSPECTION.**

   The Carrier and any Participating carrier shall be entitled, but under no obligation, to open any Container at any time and to inspect the contents.  If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense, the Carrier and Participating carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expenses to continue the Carriage or to store the Goods, which storage shall be deemed to constitute due delivery under this Bill of Lading.  The Merchant shall indemnify the Carrier, any Participating carrier, independent contractor, their agents and servants, against any reasonable additional Charges so incurred.

11. **DECK CARGO.**

   Deck cargo (except that carried in Containers on deck) and live animals are received and carried solely at Merchant's risk (including accident or mortality of animals), and the Carrier will not in any event be liable for any loss or damage for or from which he is exempt, immune or exonerated by applicable law, or from any other cause whatsoever not due to the fault of the Carrier, any warranty of seaworthiness in the premises being hereby waived, and the burden of proving liability being in all respects upon the Merchant.  Except as may be otherwise provided, such shipments shall be deemed Goods and shall be subject to all Terms and Conditions of this Bill of Lading.

12. **METHODS AND ROUTES OF TRANSPORTATION.**

   With respect to the Goods or Containers or other packages, the Carrier may at any time and without notice to the Merchant:

   a) use any means of transport (water, land and/or air) or storage whatsoever;

   b) forward, transship or retain on board or carry on another vessel or conveyance or by any other means of transport than that named on the reverse side hereof;

   c) carry Goods on or under deck at its option;   d) proceed by any route in its sole and absolute discretion and whether the nearest, most direct, customary or advertised route or in or out of geographical rotation;

   e) proceed to or stay at any place whatsoever once or more often and in any order or omit calling at any port, whether scheduled or not;

   f) store, vanned or devanned, at any place whatsoever, ashore or afloat, in the open or covered;

   g) proceed with or without pilots;

   h) carry livestock, contraband, explosives, munitions, warlike stores, dangerous or hazardous Goods or Goods of any and all kinds;

   i) drydock or stop at any unscheduled or unadvertised port for bunkers, repairs or for any purpose whatsoever;

   j) discharge and require the Merchant to take delivery, vanned or devanned;

   k) comply with any orders, directions or recommendations given by any government or authority or by any person or body acting or purporting to act with the authority of any government or authority or having under the terms of the insurance on the Vessel or other conveyance employed by the Carrier the right to give such orders, directions or recommendations.

   l) take any other steps or precautions as may appear reasonable to the Carrier under the circumstances.

   The liberties set out in subdivisions a) through l) may be invoked for any purpose whatsoever even if not connected with the Carriage covered by this Bill of Lading, and any action taken or omitted to be taken, and any delay arising therefrom, shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

   In no circumstance whatsoever shall the Carrier be liable for direct, indirect or consequential loss or damage caused by delay.

13. **MATTERS AFFECTING PERFORMANCE.**

   In any situation whatsoever and wheresoever occurring and whether existing or anticipated before commencement of, during or after the Carriage, which in the judgment of the Carrier is likely to give rise to any hindrance, risk, capture, seizure, detention, damage, delay, difficulty or disadvantage or loss to the Carrier or any part of the Goods, or make it unsafe, imprudent, impracticable or unlawful for any reason to receive, keep, load, carry or discharge them or any part of them or commence or continue the Carriage or disembark passengers at the Port of Discharge or of the usual or intended place of discharge or delivery, or to give rise to danger, delay or difficulty of whatsoever nature in proceeding by the usual or intended route, the Carrier and any Participating carrier, independent contractor, their agents and servants, without notice to the Merchant, may decline to receive, keep, load, carry or discharge the Goods, or may discharge the Goods and may require the Merchant to take delivery, and, upon failure to do so, may warehouse them at the risk and expense of the Merchant and Goods or may forward or transsship them as provided in this Bill of Lading, or the Carrier may retain the Goods on board until the return of the Vessel to the Port of Loading or to the Port of Discharge or any other point or until such time as the Carrier deems advisable and thereafter discharge them at any place whatsoever.  In such event, as herein provided, such shall be at the risk and expense of the Merchant and Goods, and such action shall constitute complete delivery and performance under this contract, and the Carrier shall be free from any further responsibility. For any service rendered as herein above provided or for any delay or expense to the Vessel or Carrier caused as a result thereof, the Carrier shall, in addition to full Charges, be entitled to reasonable extra compensation, and shall have a lien on the Goods for same.  Notice of disposition of the Goods shall be sent to the Merchant named in this Bill of Lading within a reasonable time thereafter.

   All actions taken by the Carrier hereunder shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

14. **DELIVERY.**

   If delivery of the Goods or Containers or other packages or any part thereof is not taken by the Merchant when and where and at such time and place as the Carrier is entitled to have the Merchant take delivery, whether or not the Goods are damaged, they shall be considered to have been delivered to the Merchant, and the Carrier may, at its option, subject to its lien and without notice, elect to have same remain where they are or, if containerized, devanned and sent to a warehouse or other place, always at the risk and expense of the Merchant and Goods.

   If the Goods are stowed within a Container owned or leased by the Carrier, the Carrier shall be entitled to devan the contents of any such Container, whereupon the Goods shall be considered to have been delivered to the Merchant, and the Carrier may, at its

option, subject to its lien and without notice, elect to have same remain where they are or sent to a warehouse or other place, always at the risk and expense of the Merchant and Goods.

   At ports or places where by local law, authorities or custom, the Carrier is required to discharge cargo to lighters or other craft or where it has been so agreed or where wharves are not available which the Vessel can get to, be at, lie at, or leave, always safely afloat, or where conditions prevailing at the time render discharge at a wharf dangerous, imprudent or likely to delay the Vessel, the Merchant shall promptly furnish lighters or other craft to take delivery alongside the Vessel at the risk and expense of the Merchant and the Goods. If the Merchant fails to provide such lighters or other craft, Carrier, acting solely as agent for the Merchant, may engage such lighters or other craft at the risk and expense of the Merchant and the Goods.  Discharge of the Goods into such lighters or other craft shall constitute proper delivery, and any further responsibility of Carrier with respect to the Goods shall thereupon terminate.

15. **CHARGES, INCLUDING FREIGHT.**

   The Charges payable hereunder have been calculated on the basis of particulars furnished by or on behalf of the Merchant.  The Carrier shall, at any time, be entitled to inspect, reweigh, remeasure or revalue the contents and, if any of the particulars furnished by the Merchant are found to be incorrect, the Charges shall be adjusted accordingly, and the Merchant shall be responsible to pay the correct Charges and all expenses incurred by the Carrier in checking said particulars or any of them.

   Charges shall be deemed earned on acceptance of the Goods or Containers or other packages for shipment by or on behalf of the Carrier and shall be paid by the Merchant in full, without any offset, counterclaim or deduction, cargo and/or vessel or other conveyance lost or not lost, and shall be non-returnable in any event.

   The Merchant shall remain responsible for all Charges, regardless whether the Bill of Lading states, in words or symbols, that it is "Prepaid," "To be Prepaid" or "Collect."

   In arranging for any services with respect to the Goods, the Carrier shall be considered the exclusive agent of the Merchant for all purposes, and any payment of Charges to other than the Carrier shall not, in any event, be considered payment to the Carrier.

   The Merchant shall defend, indemnify and hold the Carrier, any Participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage and expense which may be sustained or incurred relative to the above.

16. **CARRIER'S LIEN.**

   The Carrier shall have a lien on the Goods, inclusive of any Container owned or leased by the Merchant, as well as  on any Charges due any other person, and any documents relating thereto, which lien shall survive delivery, for all sums due under this contract or any other contract or undertaking to which the Merchant was party or otherwise involved, including, but not limited to, General Average contributions, salvage and the cost of recovering such sums, inclusive of attorney's fees.  Such lien may be enforced by the Carrier by public or private sale at the expense of and without notice to the Merchant.

   The Merchant agrees to defend, indemnify and hold the Carrier, any Participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage or expense which may be sustained or incurred by the Carrier relative to the above and the Merchant agrees to submit to the jurisdiction of any court, tribunal or other body before whom the Carrier may be brought, whether said proceeding is of a civil or criminal nature.

17. **BULK CARGO.**

   The weight or quantity of any bulk cargo inserted in this Bill of Lading is the weight or quantity as ascertained by a third party other than the Carrier, and Carrier makes no representation with regard to the accuracy thereof.  This Bill of Lading shall not be deemed evidence against the Carrier of receipt of bulk cargo of the weight or quantity so inserted in the Bill of Lading.

18. **GOLD, SILVER, ETC.**

   Gold, silver, specie, bullion or other valuables, including those named or described in Sec. 4281 of the Revised Statutes of the United States, will not be received by the Carrier unless their true character and value are disclosed to the Carrier and a special written agreement therefor has been made in advance, and will not, in any case, be loaded or landed by the Carrier.  No such valuables shall be considered received by or delivered to the Carrier until brought aboard the ship by the shipper and put in the actual possession of, and a written receipt therefor is given by, the Master or other officer in charge.  Such valuables will only be delivered by the Carrier aboard the ship on presentation of proper documentation and upon such delivery the Carrier's responsibility shall cease.  If delivery is not so taken promptly after the ship's arrival at Port of Discharge, said valuables may be retained aboard or landed or carried on, solely at the risk and expense of the valuables and Merchant.

19. **RUST.**

   It is agreed that superficial rust, oxidation or any like condition due to moisture, is not a condition of damage but is inherent to the nature of the Goods.  Acknowledgement of receipt of the Goods in apparent good order and condition is not a representation that such conditions of rust, oxidation or the like did not exist on

**TERMS AND CONDITIONS**

receipt.

20.  **GENERAL AVERAGE.**

a)  If General Average is declared, it shall be adjusted according to the York/Antwerp Rules of 1994 and all subsequent amendments thereto from time to time made, at any place at the option of any person entitled to declare General Average, and the Amended Jason Clause as approved by BIMCO is to be considered as incorporated herein, and the Merchant shall provide such security as may be required in this connection.

b)  Notwithstanding a) above, the Merchant shall defend, indemnify and hold harmless the Carrier and any Participating carrier, their agents and servants, in respect of any claim (and any expense arising therefrom) of a General Average nature which may be made against the Carrier and/or any Participating carrier and shall provide such security as may be required in this connection.

c)  Neither the Carrier nor any Participating carrier shall be under any obligation to take any steps whatsoever to collect security for General Average contributions due to the Merchant.

21.  **LIMITATION OF LIABILITY.**

Except as otherwise provided in this Clause or elsewhere in this Bill of Lading, in case of any loss or damage to or in connection with cargo exceeding in actual value the equivalent of $500 lawful money of the Unites States, per package, or in case of cargo not shipped in packages, per shipping unit, the value of the cargo shall be deemed to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the cargo and valuation higher than $500 per package or per shipping unit shall have been declared by the Merchant before shipment and inserted in this Bill of Lading, and extra freight paid if required. In such case, if the actual value of the cargo per package or per shipping unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value.

The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except cargo shipped in bulk, and irrespective of the weight or measurement unit employed in calculating freight and related charges.

As to cargo shipped in bulk, the limitation applicable thereto shall be the limitation provided in Section 1304(5) of COGSA, or such other legislation, convention or law as may be compulsorily applicable, and in no event shall anything herein be construed as a waiver of limitation as to cargo shipped in bulk.

Where a Container is not stuffed by or on behalf of the Carrier or the parties characterize the Container as a package or a lump sum freight is assessed, in any of these events, each individual such Container, including in each instance its contents, shall be deemed a single package and Carrier's liability limited to $500 with respect to each such package, except as otherwise provided in this Clause or elsewhere in this Bill of Lading with respect to each such package. In the event this provision should be held invalid during that period in which compulsory legislation shall apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods such as, but not limited to, all periods prior to loading and subsequent to discharge from the Vessel for which the Carrier remains responsible.

Where compulsorily applicable legislation provides a limitation less than $500 per package or shipping unit, such lesser limitation shall apply and nothing herein contained shall be construed as a waiver of a limitation less than $500.

Further, where a lesser monetary limitation is applicable, such as during handling by a Participating carrier or independent contractor and damage occurs during its or their period of care, custody, control and/or responsibility, the Carrier shall be entitled to avail itself of such lesser limitation.

22.  **NOTICE OF CLAIM: TIME FOR SUIT.**

As to any loss or damage presumed to have occurred during the Carrier's period of responsibility, the Carrier must be notified in writing of any such loss or damage or claim before or at the time of discharge/removal of the Goods by the Merchant or, if the loss or damage is not then apparent, within 3 consecutive days after discharge/delivery or the date when the Goods should have been discharged/delivered. If not so notified, discharge, removal or delivery, depending upon the law applicable, shall be prima facie evidence of discharge/delivery in good order by the Carrier of such Goods.

In any event, the Carrier shall be discharged from all liability of whatsoever nature unless suit is brought within 1 year after delivery of the Goods or the date when the Goods should have been delivered, provided however, that if any claim should arise during a part of the transport which is subject by applicable law and/or tariff and/or contract to a shorter period for notice of claim or commencement of suit, any liability whatsoever of the Carrier shall cease unless proper claim is made in writing and suit is brought within such shorter period.

Suit shall not be deemed "brought" unless jurisdiction shall have been obtained over the Carrier by service of process or by an agreement to appear. In the event this provision should be held invalid during that period in which compulsory legislation shall

apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods during which the Carrier remains responsible for the Goods.

23.  **LAW AND JURISDICTION.**

a)  Governing Law shall be in accordance with Clause 4. hereof.

b)  Jurisdiction

All disputes in any way relating to this Bill of Lading shall be determined by the United States District Court for the Southern District of New York to the exclusion of the jurisdiction of any other courts in the United States or the courts of any other country PROVIDED ALWAYS that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of any other court which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but such shall not constitute a waiver of the terms of this provision in any other instance.

24.  **NON-WAIVER AND SEPARABILITY.**

Nothing in this Bill of Lading shall operate to deprive the Carrier of any statutory protection or any defense, immunity, exemption, limitation of or exoneration from liability contained in the laws of the United States, or of any other country whose laws may be applicable. The Terms and Conditions of this Bill of Lading (including all the terms and conditions of the carrier's applicable tariff or tariffs, incorporated herein by virtue of Clause 2 above) shall be separable, and if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.